

FILED

JUL 15 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 09-36385-B-7 |
| | ) | |
| GENNADIY ARUSHANOV, | ) | |
| | ) | |
| Debtor(s). | ) | Adversary No. 10-2046-B |
| | ) | |
| GENNADIY ARUSHANOV, | ) | DCN N/A |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Date:  November 18, 2010 |
| | ) | Time:  11:30 a.m. |
| ONEWEST BANK, FSB, et al., | ) | Place: U.S. Courthouse |
| | ) | Courtroom 32 |
| Defendant(s). | ) | 501 I Street |
| | ) | Sacramento, CA 95814 |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter came on for final hearing on November 18, 2011, at 11:30 a.m.  Appearances are noted on the record.  At the conclusion of the hearing the court took the matter under submission.  The following constitutes the court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

**DECISION**

The motion is granted in part and denied in part to the extent set forth herein.  The motion's request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied as to all claims for relief.  The motion's requests, pursuant to Fed. R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first, second, fourth, and fifth claims for relief contained in the

-1-

1  first amended complaint filed on June 30, 2010 (Dkt. 28)(the

2  "FAC"), are granted as to moving defendants Mortgage Electronic

3  System, Inc. ("MERS"), IMB HoldCo, LLC ("IMB HoldCo"), IMB

4  Management Holdings, LLP  ("IMB Management"), OneWest Bank Group,

5  LLC ("OneWest Group") and OneWest Venture, LLC ("OneWest

6  Venture"), and those claims are dismissed as to defendants MERS,

7  IMB HoldCo, IMB Management, OneWest Group, and OneWest Venture

8  without leave to amend.  The motion's requests, pursuant to Fed.

9  R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first,

10  second, fourth and fifth claims for relief as to moving defendant

11  OneWest Bank, FSB ("OneWest Bank") are granted as to defendant

12  OneWest Bank with leave to amend.  The motion's request for

13  dismissal of the third claim for relief as to defendants MERS,

14  IMB HoldCo, IMB Management, OneWest Group, OneWest Venture and

15  OneWest Bank (collectively, the "Moving Defendants") is granted

16  as to Moving Defendants without leave to amend.  On or before

17  August 12, 2011 the plaintiffs shall file a second amended

18  complaint that is consistent with this ruling.  If the plaintiffs

19  wish to include in the complaint claims for relief against any or

20  all of MERS, IMBHoldCo, IMB Management, OneWest Group and OneWest

21  Venture, the plaintiffs shall file a motion requesting permission

22  to include those defendants in the second amended complaint,

23  shall file and serve said motion on or before August 5, 2011, and

24  shall set said motion on the first available calendar which

25  provides proper notice to parties in interest.  If filed, the

26  motion to amend shall set forth the specific factual allegations

27

28                              -2-

1   which the plaintiffs would include in the second amended

2   complaint as to those parties which the plaintiffs seek to

3   include as named defendants.  If filed, the motion to amend will

4   also toll the August 12, 2011 deadline for filing the second

5   amended complaint set forth above pending the resolution of the

6   hearing on the motion to amend.

7                          **FACTUAL BACKGROUND**

8         By this motion, Moving Defendants move for judgment on the

9   pleadings under Fed. R. Civ. P. 12(c), made applicable to this

10  adversary proceeding by Fed. R. Bankr. P. 7012.

11        The FAC alleges five causes of action for 1.) Declaratory

12  Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11

13  U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement

14  Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

15        The FAC grounds its claims for relief on the following

16  alleged facts.  The plaintiff debtor Gennadiy Arushanov (the

17  "Debtor") owns real property located at 7927 Bonns Downs Way, Elk

18  Grove, CA 95758 (the "Property").  The Property is the Debtor's

19  personal residence.  On November 23, 2005, the Debtor executed a

20  promissory note (the "Note") payable to the order of IndyMac

21  Bank, F.S.B., ("IndyMac") for the purpose of obtaining a loan.

22  The Debtor executed a deed of trust (the "Deed of Trust")

23  encumbering the Property to secure the Note.  The terms of the

24  Note required monthly payments of $1,199.71.  The Debtor alleges

25  that the Note and Deed of Trust "did not include an escrow

26  account."  FAC, ¶ 30.

27

28                              -3-

The FAC alleges that at the time the loan was made it allegedly "specified servicing of the loan" to MERS.  IndyMac was subsequently closed by the Federal Deposit Insurance Corporation and a new entity, IndyMac Federal Bank, FSB ("IndyMac Federal"), a "bridge bank," was formed to which the assets of IndyMac, including the Note and Deed of Trust, were transferred.  The Note and Deed of Trust, along with other assets of IndyMac were then allegedly "passed through" IMB HoldCo, IMB Management, OneWest Venture and OneWest Group to OneWest Bank.

The Debtor commenced this chapter 13 bankruptcy case (the "Bankruptcy Case") on August 3, 2009.  Bankruptcy Case, Dkt. 1. The Bankruptcy Case was subsequently converted to one under chapter 7 on November 25, 2009.  Bankruptcy Case, Dkt. 47. OneWest Bank filed a secured claim (the "Claim") in the Bankruptcy Case on August 20, 2009.  The Claim is filed in the amount of $421,256.82.

The Debtor alleges that "Defendant, as a matter of normal business practice, conducts an 'Escrow Analysis' pursuant to RESPA upon notice of a bankruptcy filing."  FAC, ¶ 45.  An escrow analysis allegedly analyzes the advances made by the lender in the twelve months prior to the bankruptcy filing for the purposes of paying of property taxes, insurance and other costs related to the security for a loan and projects those costs into the future in order to determine the amount that the borrower will be required to pay for those costs in the future.  The escrow analysis also allegedly compares the amounts advanced by the

-4-

1  lender for these costs to the amounts paid into an escrow account
2  by the borrower for payment of those costs; if the result shows
3  that the lender has advanced funds in excess of what the borrower
4  has paid into the escrow account, the lender will generate a
5  notice of a post-petition increase in the regular monthly
6  mortgage payment.  The increase is allegedly intended to recoup
7  the advances paid by the Defendant in excess of the payments made
8  by the borrower to the escrow account.  The notices specifying
9  the post-petition increases in payments are sent to the debtor
10 borrower and the chapter 13 trustee.

11      The Debtor alleges that as a result of receiving a notice of
12 a post-petition payment increase, the chapter 13 trustee takes
13 action which results in the collection by the trustee of the
14 increased payment as specified in the lender's notice, which
15 action includes objections to confirmation or motions to dismiss
16 if the debtor is not proposing to pay the full amount of the
17 increased payment.  The Debtor alleges that in generating and
18 sending the notices based on post-petition escrow analyses as
19 described above, the "Defendants" fail to distinguish between
20 pre- and post-petition escrow advances and improperly collect on
21 a claim for a pre-petition debt through the ongoing monthly
22 mortgage payment.  The Debtor alleges that this practice violates
23 the automatic stay of 11 U.S.C. § 362(a).

24      In this case, the Debtor alleges that IndyMac Federal
25 generated a pre-petition escrow account disclosure statement on
26 or about November 10, 2008 reflecting a increase in mortgage
27
28                              -5-

1  payment to $2,639.73.  FAC, ¶ 31.  The Debtor alleges the

2  "Defendants" generated a post-petition escrow account disclosure

3  statement on or about August 14, 2009, which notice was sent to

4  the Debtor and the chapter 13 trustee stating that the post-

5  petition mortgage payment had increased to $3,483.03.  FAC, ¶ 39

6  & 41.  The Debtor also alleges that on or about November 19,

7  2009, OneWest Bank sent another notice informing the Debtor and

8  the chapter 13 trustee that the post-petition payment had

9  increased to $3,482.03.  FAC, ¶ 42.

10      The Debtor also alleges that the "Defendants" violated RESPA

11  by (1) failing to notify the Debtor when the note and deed of

12  trust were transferred; (2) assessing more "risk" in the

13  Defendants' escrow analysis calculations than is allowed by

14  RESPA; (3) improperly accessing the escrow account for payment of

15  property taxes and insurance; (4) failing to credit back charges

16  improperly force-placing insurance when the Debtors had paid for

17  insurance themselves; and (5) performing an improper escrow

18  analysis that resulted in incorrect notices of increase in

19  payments.  The Debtor specifically cites 12 U.S.C. § 2604 as the

20  basis for her claims for RESPA violations.

21      Finally, the Debtor alleges that the "Defendants," were

22  engaged in a civil conspiracy for the purpose of "recouping pre-

23  petition claims from post-petition estate property resulting in

24  systematic injury to debtor" by means of the allegedly improper

25  escrow analyses described above, concealing the post-petition

26  collection of pre-petition claims, and objecting to confirmation

27

28                              -6-

1  of chapter 13 plans based on the improper escrow analyses.

2  In addition to the facts alleged by the Debtor in the FAC

3  summarized above, the court takes judicial notice of the Escrow

4  Account Disclosure Statements dated August 14, 2009 (the

5  "Statement")(Dkt. 55 at 4) and the Deed of Trust dated November

6  23, 2005 (Dkt. 56 at 2), copies of which were submitted by the

7  Moving Defendants with this motion.  In the Ninth Circuit, a

8  court may consider a writing referenced in a complaint but not

9  explicitly incorporated therein if the complaint relies on the

10  document and its authenticity is unquestioned.  <u>Parrino v. FHP,</u>

11  <u>Inc.</u>, 146 F.3d 699, 706 (9th Cir.1998), <u>superseded by statute on</u>

12  <u>other grounds as stated in</u> <u>Abrego v. Dow Chem. Co.</u>, 443 F.3d 676

13  (9th Cir.2006); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d

14  668, 688 (9th Cir.2001).  In this case, both the Statement and

15  the Deed of Trust are referenced in the FAC but are not

16  explicitly incorporated therein.  The Debtor does not question

17  the authenticity of either document.

18  Having taken judicial notice of the Deed of Trust, the court

19  notes, contrary to the Debtor's allegations in the FAC, that the

20  Deed of Trust does provide as part of its uniform covenants that

21  the Debtor shall pay the lender periodic payments of amounts due

22  for taxes, assessements, items that can attain priority over the

23  Deed of Trust as a lien or encumbrance on the Property, and

24  insurance premiums.  Deed of Trust, Dkt. 56 at 5.

25  **ANALYSIS**

26  <u>The Law Applicable to A Motion For Judgment on the Pleadings</u>

27

28  -7-

A judgment on the pleadings under Rule 12(c) "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir. 1998). Although the caption of this motion indicates that it is a motion for a judgment on the pleadings pursuant to Rule 12(c), the motion and the prayer contained in the supporting memorandum of points and authorities requests dismissal of the FAC without leave to amend. However, pursuant to Fed. R. Civ. P. 12(h)(2), a motion made pursuant to Rule 12(c) may be used to raise a defense under Fed. R. Civ. P. 12(b)(6) that a complaint fails to state a claim upon which relief may be granted. In this case, the Defendants raised a defense under Rule 12(b)(6) as their first affirmative defense in their answer to the FAC filed on July 26, 2010 (Dkt. 32 at 13) The Defendants defense under Rule 12(b)(6) is two-pronged. First, the Defendants seek dismissal of the FAC because the Debtor failed to state a claim upon which relief can be granted due to "lack of standing." (Dkt. 57 at 12). Second, the Defendants seek dismissal of the FAC because the Debtor failed to state a claim upon which relief can be granted based either on the Debtor's failure to advance a cognizable legal theory or plead sufficient facts under a cognizable legal theory.

Dismissal under Rule 12(b)(6) is warranted when a plaintiff cannot satisfy the applicable "prudential" standing requirement(s). <u>Guerrero v. Gates</u>, 357 F.3d 911, 920-21 (9th Cir.2003). Generally, the concept of standing involves two

1  inquiries.  See Franchise Tax Bd. v. Alcan Aluminum, 493 U.S.

2  331, 335, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) ("We have treated

3  standing as consisting of two related components: the

4  constitutional requirements of Article III and nonconstitutional

5  prudential considerations."); Warth v. Seldin, 422 U.S. 490, 498,

6  95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).  In the first, the

7  court must ask whether the plaintiff has suffered sufficient

8  injury to satisfy the "case or controversy" requirement of

9  Article III.  A suit brought by a plaintiff without Article III

10  standing is not a "case or controversy," and an Article III

11  federal court therefore lacks subject matter jurisdiction over

12  the suit.  Steel Co. v. Citizens for a Better Environment, 523

13  U.S. 83, 101-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In that

14  event, the suit is dismissed under Federal Rule of Civil

15  Procedure 12(b)(1).  Warren v. Fox Family Worldwide, Inc., 328

16  F.3d 1136, 1140 (9th Cir.2003); Scott v. Pasadena Unified Sch.

17  Dist., 306 F.3d 646, 664 (9th Cir.2002).  In the second, the

18  court must determine whether the plaintiff is properly able to

19  assert a particular claim.  Lujan v. Defenders of Wildlife, 504

20  U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Franchise

21  Tax Bd. v. Alcan Aluminum, 493 U.S. 331, 335, 110 S.Ct. 661, 107

22  L.Ed.2d 696 (1990); Dunmore v. U.S., 358 F.3d 1107, 1112 (9th

23  Cir.2004).  Frequently, this inquiry requires an analysis of

24  whether a statute under which the plaintiff asserts a claim has

25  conferred "standing" on the plaintiff.  In such cases,

26  non-constitutional or "prudential" standing exists when "a

27

28                            -9-

particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." <u>See City of Sausalito v. O'Neill</u>, 386 F.3d 1186, 1199 (9th Cir.2004); <u>see also Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). If a plaintiff has suffered sufficient injury to satisfy the jurisdictional standing requirement of Article III, but the plaintiff cannot satisfy the applicable prudential standing requirement(s), the plaintiff cannot state a claim upon which relief can be granted. <u>Guerrero</u>, 357 F.3d at 920-21 (9th Cir.2003), In that event, the claim for relief is dismissed under Rule 12(b)(6). <u>Id.</u> at 920-21.

Dismissal under Rule 12(b)(6) is also warranted when a plaintiff fails to allege a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. In such situations, the following sets forth the legal standard:

> The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here under Fed. R. Bankr. P. 7012, is to test the legal sufficiency of a plaintiff's claims for relief. In determining whether a plaintiff has advanced potentially viable claims, the complaint is to be construed in a light most favorable to the plaintiff and its allegations taken as true. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); <u>Church of Scientology of Cal. v. Flynn</u>,

744 F.2d 694, 696 (9th Cir.1984). . .

Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re
Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho
2000).

In addition, under the Supreme Court's most recent
formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare
elements of his cause of action, affix the label 'general
allegation,' and expect his complaint to survive a motion to
dismiss." Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009).
Instead, a complaint must set forth enough factual matter to
establish plausible grounds for the relief sought. See Bell Atl.
Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007). ("[A]
plaintiff's obligation to provide 'grounds' of his 'entitle[ment]
to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."). Factual allegations must be enough to raise a right
to relief above the speculative level. Id., citing to 5 C.
Wright & A. Miller, Fed. Practice and Procedure § 1216, at 235-36
(3d ed. 2004) ("[T]he pleading must contain something more. . .
than . . . a statement of facts that merely creates a suspicion
[of] a legally cognizable right of action").

The court also notes the following:

> [T]he Court is not required "to accept as true
> allegations that are merely conclusory, unwarranted

-11-

deductions of fact, or unreasonable inferences."
Sprewell v. Golden State Warriors, 266 F.3d 979, 988
(9th Cir. 2001). Courts will not "assume the truth of
legal conclusions merely because they are cast in the
form of factual allegations." Warren v. Fox Family
Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003);
accord W. Mining Council v. Watt, 643 F.2d 618, 624
(9th Cir. 1981). Furthermore, courts will not assume
that plaintiffs "can prove facts which [they have] not
alleged, or that the defendants have violated . . .
laws in ways that have not been alleged." Assoc. Gen.
Contractors of Cal., Inc. v. Cal. State Council of
Carpenters, 459 U.S. 519, 526; 103 S. Ct. 897, 74 L.
Ed. 2d 723 (1983). . .

Toscano v. Ameriquest Mortg. Co., 2007 U.S. Dist. LEXIS 81884
(E.D. Cal. 2007).

A motion for judgment on the pleadings under Rule 12(c) is
"essentially equivalent to a Rule 12(b)(6) motion to dismiss, so
a district court may 'dispose of the motion by dismissal rather
than judgment.'" Technology Licensing Corp. v. Technicolor USA,
Inc., 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting Sprint
Telephony PCS, L.P. v. County of San Diego, 311 F.Supp.2d 898,
902-03 (S.D.Cal.2004)).

If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted,
"[the] court should grant leave to amend even if no request to

amend the pleading was made, unless it determines that the
pleading could not possibly be cured by the allegation of other
facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir.
1995). In other words, the court is not required to grant leave
to amend when an amendment would be futile. See Toscano, 2007
U.S. Dist. LEXIS 81884 (citing Gompper v. VISX, Inc., 298 F.3d
893, 898 (9th Cir. 2002)).  Similarly, a court may also grant
leave to amend in response to a Rule 12(c) motion "if the
pleadings can be cured by further factual enhancement."
Technology Licensing Corp., 2010 WL 4070208 at *3.

Standing

As a preliminary matter, the court must first address the
Moving Defendants argument that the Debtor "lacks standing" to
prosecute any of the causes of action in the FAC.  Since the
Moving Defendants seek dismissal under Rule 12(b)(6), the court
construes Moving Defendants' argument as one implicating the
Debtor's "prudential" standing.  The Moving Defendants argue that
each cause of action is property of the bankruptcy estate under
11 U.S.C. § 541(a)(1), and absent an abandonment, may only be
prosecuted by the chapter 7 trustee.  The Moving Defendants
further argue that the chapter 7 trustee is the sole
representative of the bankruptcy estate, and holds all the rights
and responsibilities for property of the estate.  11 U.S.C. §
323(a).  Accordingly, the Moving Defendants seek dismissal of
each cause of action under Rule 12(b)(6) because the Debtor is

-13-

not the proper party to pursue each cause of action, and
therefore, lacks "prudential" standing.

The Moving Defendants arguments with regard to the Debtor's
standing are unavailing.  The Moving Defendants failed to
consider that the causes of action were claimed as exempt in the
Debtor's Amended Schedule C filed on May 18, 2010.  (Bankruptcy
Case, Dkt. 83 at 7).  11 U.S.C. § 522(b) allows an individual
debtor to exempt specific property from liquidation as part of
the estate.  As recently noted by the Supreme Court, "most assets
become property of the estate upon commencement of a bankruptcy
case, see 11 U.S.C. § 541, and exemptions represent the debtor's
attempt to reclaim those assets or, more often, certain interests
in those assets, to the creditors' detriment." Schwab v. Reilly,
560 U.S. ----, ----, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010).

Once a claim of exemption has been asserted, "[u]nless a
party in interest objects, the property claimed as exempt on
[Official Form 6C] is exempt." 11 U.S.C. § 522(l); Taylor v.
Freeland & Kronz, 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d
280 (1992).  If the 30-day objection period mandated by
Bankruptcy Rule 4003(b) runs without objection, "[p]roperty
claimed as exempt leaves the estate and revests in the
debtor...." Kretzer v. DFW Fed. Credit Union (In re Kretzer), 48
B.R. 585, 588 (Bankr. D. Nev. 1985).  Here, the Debtor's Amended
Schedule C filed on May 18, 2010, exempted the causes of action
in the FAC, and no party in interest objected to the claims of
exemption.  Accordingly, the causes of action revested in the

-14-

1  Debtor, and the Debtor has "prudential" standing to prosecute
2  these causes of action.

3       With regard to the Debtor's second claim for relief for
4  violation of 11 U.S.C. § 362(a), the claim arose post-petition
5  and was therefore not property of the bankruptcy estate under 11
6  U.S.C. § 541.  Even if the claim were considered linked to the
7  Property, which was property of the bankruptcy estate, 11 U.S.C.
8  § 522's right to claim exemptions in property of the estate
9  bestows standing on debtors, even those in chapter 7, for
10 purposes of recovering under 11 U.S.C. § 362(k)(1).  In re
11 Mwangi, 432 B.R. 812, 823-24 (9th B.A.P. 2010).  Section
12 362(k)(1)'s "provision of a remedy for 'an individual' injured by
13 any willful violation of the stay, it appears primarily to have
14 been designed to protect the rights of *individual debtors*, since,
15 while frequently they are individuals, trustees always represent
16 the estate and may not be entitled to recover damages under §
17 362(k)."  (Emphasis added).  Id.  See, e.g., Havelock v. Taxel
18 (In re Pace), 67 F.3d 187, 192-93 (9th Cir.1995).  Moreover,
19 courts have long held that an individual debtor may sue a
20 creditor for a willful violation of the automatic stay even after
21 bankruptcy proceedings have terminated, and in the district court
22 rather than the bankruptcy court.  In re Fingers, 170 B.R. 419,
23 425 (S.D. Cal. 1994) (citations omitted).  This could not occur
24 if the right to commence an action for a violation of the
25 automatic stay vested solely in the bankruptcy trustee rather
26 than in an individual debtor.  Id.  Here, the Debtor is an
27
28                              -15-

1  individual, and accordingly, may pursue damages or sanctions for

2  a stay violation.

3

4                    Dismissal of Non-OneWest Bank

5              Moving Defendants Without Leave to Amend

6        Before turning to an analysis of each of the enumerated

7  claims for relief set forth in the FAC, the court next addresses

8  the inclusion of named defendants IMB HoldCo, IMB Management,

9  OneWest Group and OneWest Venture (collectively, the "Non-OneWest

10 Bank Defendants") in the FAC, which parties were not named as

11 defendants in the initial complaint filed on January 26, 2010.

12 The FAC identifies the Non-OneWest Bank Defendants and alleges

13 that each of the Non-OneWest Bank Defendants held an interest in

14 the loan at some time or provided loan servicing, but does not

15 contain any specific allegations relating to conduct of the Non-

16 OneWest Bank Defendants with respect to the Bankruptcy Case.

17 Instead, the allegations in the FAC only allege that OneWest Bank

18 filed a proof of claim in the bankruptcy case and sent notices to

19 the Debtor regarding the amount of her monthly mortgage payment.

20       To the extent that any conduct of the Non-OneWest Bank

21 Defendants is alleged in the FAC at all, the Non-OneWest Bank

22 Defendants are only vaguely and ambiguously identified with the

23 label "Defendants," "Defendant" or "defendant." In light of the

24 allegations in the FAC and those matters of which this court has

25 taken judicial notice which indicates OneWest Bank is the only

26 named defendant which has actively sought to enforce the Claim in

27

28                              -16-

this case, the Debtor's vague allegations are insufficient to state any plausible claim for relief as against the Non-OneWest Bank Defendants.

### Dismissal of Third Claim for Relief (Violation of 11 U.S.C. § 362(k)(1)) Without Leave to Amend

The Moving Defendants' request for judgment on the pleadings with respect to the third claim for relief is denied, and the claim is dismissed without leave to amend as to all named defendants, but without prejudice to the inclusion of a claim for violation of the automatic stay in an amended complaint, as discussed, _infra_, in connection with the second claim for relief.

The third claim for relief alleges a violation of 11 U.S.C. § 362(k)(1).  Section 362(k)(1), however, does not create a right of action but governs the available remedies and measure of damages for a violation of a stay provided by § 362.  As a result, because the Debtor cannot state a claim for a violation of § 362(k)(1), the claim is dismissed without leave to amend.

### Dismissal of OneWest Bank With Leave to Amend

Having addressed the Debtor's allegations with respect to the Non-OneWest Bank Defendants, the court now addresses each of the Debtor's first, second, fourth and fifth claims for relief with respect to OneWest Bank.

### 1. First Claim for Relief: (Declaratory Relief)

-17-

1   This claim for relief is dismissed as to OneWest Bank with

2   leave to amend.

3   The facts alleged by the Debtor establishes the existence of

4   a dispute between the Debtor and some, if not all, of the named

5   defendants regarding the correct amount of the ongoing monthly

6   payments to be made by the Debtor under her note and deed of

7   trust obligations, the correct method by which the escrow

8   analysis should be prepared, and the proper amount of the pre-

9   petition claim based on the note and deed of trust obligation.

10   The first claim for relief fails, however, to distinguish

11   adequately among the named defendants with respect to the

12   aforementioned disputes.  The Debtor has not alleged facts

13   supporting a need for declaratory relief between themselves and

14   all of the named defendants, and, as a result, the defendants

15   have not been given fair notice of the claims being alleged

16   against each of them.  *See* *Erickson v. Pardus*, 551 U.S. 89, 93

17   (2007)(under Fed. R. Civ. P. 8, the plaintiff need only provide a

18   short and plain statement of the claim for relief, but must also

19   give the defendant fair notice of the claims being alleged

20   against it).  The Debtor's allegations that a controversy exists

21   between herself and "Defendants" is insufficient, considering

22   that the Debtor converted the Bankruptcy Case to one under

23   chapter 7 and has expressed no intention with regard to the

24   Property.  It appears, based on the Debtor's general allegations,

25   that the claim for declaratory relief is relevant, it at all,

26   only to the Debtor and OneWest Bank, the only entity alleged to

27

28                                    -18-

have taken an active role in enforcing the Claim in ths

bankruptcy case.  However, the Debtor is given leave to amend to

clarify the exact nature of the dispute between themselves and

each of the remaining named defendants in light of the Bankruptcy

Case's current posture as one under chapter 7, to the extent such

a dispute exists.

2.   *Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*

This claim for relief is dismissed as to OneWest Bank with

leave to amend.

The Moving Defendants argue that the facts alleged by the

Debtor do not constitute a violation of the automatic stay of 11

U.S.C. § 362(a).  The Moving Defendants argue that because the

Debtor did not allege that the notices sent by the Moving

Defendants to the Debtor and the chapter 13 trustee were

accompanied by a payment envelope, or that the notices were

threatening or coercive, that no claim for violation of the

automatic stay has been alleged.

The Moving Defendants rely heavily on the recent decision of

the Ninth Circuit Bankruptcy Appellate Panel in In re Zotow, 432

B.R. 252 (9th Cir. BAP 2010).  The facts underlying Zotow are

similar to those alleged in the instant adversary proceeding.

The Zotows were debtors in chapter 13 who objected to a proof of

claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows

objected to BAC's claim on the ground that the Zotows' pre-

petition escrow account shortages should have been listed in the

-19-

proof of claim.  Rather than include the shortage in the proof of claim, BAC had instead performed an escrow analysis and had sent the debtors and the chapter 13 trustee a post-petition notice which indicated an increase in their ongoing monthly installment payment into the escrow account due to the pre-petition shortage. The notice stated that it was being furnished for informational purposes only and should not be construed as an attempt to collect against the debtors personally.  The notice also stated that if the debtors were involved in a chapter 13 proceeding the debtors were required to obey all orders of the court in the event that the amount specified in the notice conflicted with any order or requirement of the court.  Based on the notice, the chapter 13 trustee made several ongoing post-petition installment payments to BAC from the debtors' plan payments based on the amount of the payments as specified in the notice.  The chapter 13 trustee also objected to confirmation of the debtors' chapter 13 plan on the ground that the debtors' proposed plan payment was insufficient to fully fund the plan based on the increased payment amount set forth in the notice sent by BAC.

The debtors argued that BAC's attempt to collect the escrow shortage, a pre-petition debt, by increasing the ongoing post-petition installment payment through the chapter 13 plan rather than including the escrow shortage in the proof of claim constituted a violation of the automatic stay.  Following an evidentiary hearing the bankruptcy court concluded that BAC should have included the pre-petition escrow shortage in its

-20-

proof of claim, but also found that BAC had not violated the
automatic stay.

The BAP affirmed the bankruptcy court's conclusion that BAC
had not violated the automatic stay.  As the BAP stated:

> [T]he automatic stay does not prevent all communications
> between a creditor and the debtor. Morgan Guar. Trust Co. of
> N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th
> Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor),
> 366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a
> communication is a permissible or prohibited one is a
> fact-driven inquiry which makes any bright line test
> unworkable. See Henry v. Assocs. Home Equity Servs., Inc.,
> 272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's
> activities involved coercion or harassment is fact-specific
> inquiry); Cousins v. CitiFinancial Mortgage Co. (In re
> Cousins), 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting
> that determining whether a violation of the automatic stay
> occurs can be complicated).

Zotow, 432 B.R. at 258.

The BAP went on to identify prohibited communications as
"those where direct or circumstantial evidence shows the
creditors actions were geared toward collection of a pre-petition
debt, were accompanied by coercion or harassment, or otherwise
put pressure on the debtor to pay. . . . [M]ere requests for

payment and statements simply providing information to a debtor
are permissible communications that do no run afoul of the stay."
Id. "In the end, one distinguishing factor between permissible
and prohibited communications is evidence indicating harassment
or coercion.  When such evidence is present, a disclaimer on the
communication that it was being sent 'for informational purposes
only' is ineffective."  Id. at 259.  The BAP identified three
significant facts in Zotow that informed its conclusion that the
post-petition notice sent by BAC did not violate the automatic
stay: (1) the notice was not in the nature of an invoice and
merely set forth the fact of the debt; (2) BAC did not send the
notice with a payment coupon or envelope and without any
informational component; and (3) BAC sent only one notice to the
debtors, and the information contained in that notice was
information that the debtors would need to propose a feasible
chapter 13 plan.  Id. at 259-60.  The Zotow court also found that
BAC did not violate the automatic stay by receiving increased
post-petition payments from the chapter 13 trustee.

      In the instant case, the copy of the Escrow Account
Disclosure Statement dated August 14, 2009 submitted by the
Moving Defendants states in two places that it is not being used
to collect a debt, but is for informational purposes only.  It
also states that IndyMac Mortgage Services, a division of OneWest
Bank, which sent the statement to the Debtor, calculated an
anticipated escrow shortage amount of $6,858.33 by the end of
August, 2009 if the Debtor did not plan to pay the increased

monthly payment specified in the statement or pay the escrow
shortage in a lump sum. The statement stated that OneWest Bank
"required" the escrow balance to be $6,743.07 by the end of
October, 2009. The statement also states that if the Debtor
wanted to pay the escrow shortage in a lump sum, she should
return it to IndyMac Mortgage Services with the coupon attached
to the Statement. As in <u>Zotow</u>, the Statement is not in the
nature of an invoice. The Statement also states that it is for
informational purposes only and is not being used to collect a
debt, though it does state that the Debtor was "required" to have
a certain balance in her escrow account by the end of August,
2009 and included a coupon to be returned with payment in the
even that the Debtor wished to pay the escrow shortage in a lump
sum.

The question, then, is whether the Debtor's allegation that
notices regarding changes in her payment is sufficient to elevate
the alleged actions of one or more of the Moving Defendants to a
violation of the automatic stay. The court concludes that the
allegations contained in the FAC are not sufficient. The court
does not reach this conclusion because the sending of a notice
regarding post-petition payment increases can never be a
violation of the automatic stay; the court does not foreclose the
possibility that a creditor's sending of a notice to a debtor,
whether informational or not, may rise to the level of coercion
or harassment. As the <u>Zotow</u> court pointed out, whether
communications are prohibited or permitted or whether they rise

-23-

to the level of coercion or harassment are fact-driven inquiries for which there are no bright-line rules.

Instead, the court concludes that the allegations in the FAC and under the second claim for relief are not sufficient to state a claim upon which relief may be granted because, as with the first claim for relief, they do not give each of the Moving Defendants and the other named defendants fair notice of the claims being alleged against them. As with the first claim for relief, the general allegations in the FAC and in the second claim for relief are replete with vague references to "Defendants," "defendants" and "Defendant," with no apparent effort made to distinguish between each of the eleven defendants named in the caption of the FAC.

In addition, other than the sending of a notice regarding a payment increase, the FAC is devoid of other allegations which, construed in the light most favorable to the Debtor, would show coercive or harassing behavior on the part of any of the Moving Defendants. As a result, the second claim for relief is dismissed with leave given to the Debtor to amend the FAC to specify which of the named defendants committed acts which allegedly violated the automatic stay and, to the extent that they exist, to allege additional facts regarding the sending of the Notice or other acts committed in violation of the automatic stay.

3. *Fourth Claim for Relief (Violation of Real Estate Settlement*

1    *Practices Act (RESPA))*

2        This claim is dismissed as to OneWest Bank with leave to

3    amend.

4        The fourth claim for relief alleges that the "Defendants"

5    violated RESPA by (1) failing to notify the Debtor when the note

6    and deed of trust were transferred; (2) assessing more "risk" in

7    the "Defendants'" escrow analysis calculations than is allowed by

8    RESPA; (3) improperly accessing the escrow account for payment of

9    property taxes and insurance; (4) failing to credit back charges

10   for improperly force-placing insurance; and (5) performing an

11   improper escrow analysis that resulted in incorrect notices of

12   increase in payments.  However, the Debtor cites only 12 U.S.C. §

13   2604 in connection with the claim.  Section 2604, however,

14   governs the form and distribution of special information booklets

15   regarding the nature and costs of real estate settlement

16   services.

17       In their written opposition, the Debtor has identified other

18   sections of RESPA that she asserts were violated by the Moving

19   Defendants.  These sections, however, are not identified in the

20   FAC.  In the context of a motion for a more definite statement

21   under Fed. R. Civ. P. 12(e), the Ninth Circuit has stated, "even

22   though a complaint is not defective for failure to designate the

23   statute or other provision of law violated, the judge may in his

24   discretion . . . require such detail as may be appropriate in the

25   particular case."  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir.

26   1996).  Although the Moving Defendants have filed a motion for

27

28                                -25-

1  judgment on the pleadings rather than for a more definite
2  statement, the court finds that McHenry v. Renne is applicable
3  here, insofar as a motion for a more definite statement and a
4  motion for judgment on the pleadings are both concerned with the
5  sufficiency of the plaintiff's pleading.  In this case, the court
6  dismisses the fourth claim for relief with leave to amend as to
7  the specific provisions of RESPA that the Debtor asserts were
8  violated by one or more of the named defendants because RESPA is
9  a complex statute that covers several sections of Chapter 27 of
10  the United States Code.  Requiring the Debtor to specify the
11  specific provisions that she believes were violated prevents both
12  the Moving Defendants and the court from guessing which
13  provisions of RESPA the Debtor believed the Moving Defendants
14  violated and gives fair notice to all parties and the court of
15  the claims being asserted.

16      The fourth claim for relief is also dismissed with leave to
17  amend because, like the first and second claims for relief, it is
18  replete with vague references to "Defendants" and "defendants"
19  without any distinction between the eleven named defendants in
20  the caption of the FAC.  The allegations underlying the fourth
21  claim for relief do not give the remaining defendants fair notice
22  of the claims being asserted against them.  As a result, the
23  fourth claim for relief is dismissed with leave given to the
24  Debtor to amend the claim to specify which of the remaining named
25  defendants violated RESPA and the specific manner in which they
26  violated RESPA.

27

28                          -26-

1              *4. Fifth Claim for Relief (Civil Conspiracy)*

2          This claim is dismissed as to OneWest Bank with leave to

3     amend.

4          Civil conspiracy is not an independent tort.  Instead it is

5     "merely a mechanism for imposing vicarious liability; it is not

6     itself a substantive basis for liability.  Each member of the

7     conspiracy becomes liable for all acts done by other pursuant to

8     the conspiracy, and for all damages caused thereby."  <u>Favila v.</u>

9     <u>Katten Muchin Rosenman LLP</u>, 188 Cal.App.4th 189, 206 (2010).  A

10    civil conspiracy is "activated by the commission of an actual

11    tort."  <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7

12    Cal.4th 503, 511 (1994).

13         In addition, "[t]he basis of a civil conspiracy is the

14    formation of a group of two or more persons who have agreed to a

15    common plan or design to commit a tortious act.  The conspiring

16    defendants must also have actual knowledge that a tort is planned

17    and concur in the tortious scheme with knowledge of its unlawful

18    purpose.  However, actual knowledge of the planned tort, without

19    more, is insufficient to serve as the basis for a conspiracy

20    claim.  Knowledge of the planned tort must be combined with

21    intent to aid its commission."  <u>Id.</u> (citing <u>Kidron v. Movie</u>

22    <u>Acquisition Corp.</u>, 40 Cal.App.4th 1571, 1582 (1995).

23         Here, the Debtor alleges that the "Defendants" engaged in a

24    conspiracy for the purpose of "recouping pre-petition claims from

25    post-petition estate property resulting in systematic injury to

26    debtor" by means the allegedly improper escrow analyses described

27

28                              -27-

above, concealing the post-petition collection of pre-petition
claims, and objecting to confirmation of chapter 13 plans based
on the improper escrow analyses.  These allegations, however, are
not sufficient to state a claim that any of the named defendants
were involved in a civil conspiracy.  The Debtor has not alleged
any agreement between any of the named defendants to a common
plan or design to commit a tortious act, nor have they alleged
that any of the named defendants had actual knowledge that a tort
was planned and that they concurred in the tortious scheme with
knowledge of its unlawful purpose.  This claim for relief also
suffers from the same defects as the first, second, and fourth
claims for relief in that it also fails to distinguish between
any of the named defendants with respect to the alleged civil
conspiracy.  For these reasons, the court dismisses the fifth
claim for relief as to OneWest Bank with leave to amend.

      Rather than issue judgment in favor of OneWest Bank, the
court dismisses the first, second, fourth and fifth claims for
relief in the FAC with leave to amend as to OneWest Bank because
the court finds that it is possible that the deficiencies
identified in the FAC may be cured with further factual
enhancement.  The court cautions the Debtor that the second
amended complaint must clearly identify which of the remaining
named defendants violated their legal rights and the specific
manner in which they violated those rights; if the Debtor fails
to do so those defendants who are not clearly connected with the
acts complained of will be dismissed without leave to amend.

-28-

1        The court will issue a separate order consistent with this

2 ruling.

3

4

5 Dated: JUL 1 4 2011

6                   _Thomas C. Holman_

7                United States Bankruptcy Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28               -29-

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

## CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Joshua del Castillo
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Terry Loftus
1770 4th Ave
San Diego, CA 92101

DATED: 7/15/11

By: _____
        **Deputy Clerk**

Mark D. Swim